IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAMELIA STELTER,            )<br>                             )<br>            Plaintiff,       )<br>                             )<br>    v.                       )   Civil Action No. 04-802<br>                             )<br>JO ANNE B. BARNHART,         )<br>COMMISSIONER OF              )<br>SOCIAL SECURITY,             )<br>                             )<br>            Defendant.        )  | |

## MEMORANDUM JUDGMENT ORDER

AND NOW, this 25–th day of August, 2005, upon due consideration of the parties' cross-motions for summary judgment pursuant to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for supplemental security income under Title XVI of the Social Security Act ("Act"), IT IS ORDERED that the Commissioner's motion for summary judgment (Document No. 8) be, and the same hereby is, granted and plaintiff's motion for summary judgment (Document No. 6) be, and the same hereby is, denied.

As the factfinder, an Administrative Law Judge ("ALJ") has an obligation to weigh all of the facts and evidence of record and may reject or discount any evidence if the ALJ explains the

reasons for doing so. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). Where the ALJ's findings of fact are supported by substantial evidence, a reviewing court is bound by those findings, even if it would have decided the factual inquiry differently. Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). These well-established principles preclude a reversal or remand of the ALJ's decision here because the record contains substantial evidence to support the ALJ's findings and conclusions.

Plaintiff protectively filed her pending application for supplemental security income on August 16, 2002, alleging a disability onset date of August 3, 2002, due to spinal stenosis and cervical fusion surgery. Plaintiff's application was denied initially. At plaintiff's request an ALJ held a hearing on February 4, 2004, at which plaintiff, represented by counsel, appeared and testified. On February 17, 2004, the ALJ issued a decision finding that plaintiff is not disabled. On March 25, 2004, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner.

Plaintiff was 49 years old at the time of the ALJ's decision and is classified as a younger person under the regulations. 20 C.F.R. §416.963(c). She is a high school graduate. Plaintiff has past relevant work experience as a cashier and cleaner but has not engaged in any substantial gainful activity since her alleged

onset date.

After reviewing plaintiff's medical records and hearing testimony from plaintiff and a vocational expert, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. The ALJ found that although the medical evidence establishes that plaintiff suffers from the severe impairments of degenerative disc disease of the cervical spine with status post cervical discectomy and fusion from C-4 through T-1 and bilateral carpal tunnel syndrome, those impairments, alone or in combination, do not meet or equal the criteria of any of the impairments listed at Appendix 1 of 20 C.F.R., Part 404, Subpart P.

The ALJ also found that plaintiff retains the residual functional capacity for a significant range of work at the sedentary exertional level but with certain restrictions recognizing the limiting effects of her impairments. Taking into account these limiting effects, a vocational expert identified numerous categories of jobs which plaintiff could perform based upon her age, education, work experience and residual functional capacity, including packager, assembler and surveillance system monitor. Relying on the vocational expert's testimony, the ALJ found that plaintiff is capable of making an adjustment to work which exists in significant numbers in the national economy. Accordingly, the ALJ determined that plaintiff is not disabled within the meaning of the Act.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment which can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §1382c(a)(3)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. §1382c(a)(3)(B).

The Commissioner has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability. 20 C.F.R. §416.920; Newell v. Commissioner of Social Security, 347 F.3d 541, 545 (3d Cir. 2003). If the claimant is found disabled or not disabled at any step, the claim need not be reviewed further. Id.; see Barnhart v. Thomas, 540 U.S. 20 (2003).

The ALJ must determine in sequence: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether she has a severe impairment; (3) if so, whether her impairment meets or equals the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant's impairment prevents her from performing her past-relevant work; and (5) if so, whether the claimant can perform any other work which exists in the national economy, in light of her age,

education, work experience, and residual functional capacity. 20 C.F.R. §416.920. See also Newell, 347 F.3d at 545-46.

Here, plaintiff challenges the ALJ's finding of not disabled at steps 3 and 5 of the sequential evaluation process. Specifically, plaintiff contends that: (1) the ALJ erred at step 3 by not finding that plaintiff meets or equals a listed impairment; (2) the ALJ erred at step 5 by failing to apply medical-vocational guidelines directing a finding of disabled; (3) the ALJ erred at step 5 by failing to consider all of the medical evidence; and (4) the ALJ erred at step 5 by improperly relying on the vocational expert's answer to a defective hypothetical that did not account for all of plaintiff's impairments and limitations. The court has considered these arguments and finds each of them to be without merit.

Plaintiff first challenges the ALJ's step 3 finding. At step 3, the ALJ must determine whether a claimant's impairment matches, or is equivalent to, one of the listed impairments. Burnett v. Commissioner of Social Security Administration, 220 F.3d 112, 119 (3d Cir. 2000). The listings describe impairments that prevent an adult, regardless of age, education, or work experience, from performing any gainful activity. Knepp v. Apfel, 204 F.3d 78, 85 (3d Cir. 2000); 20 C.F.R. §416.920(d). "If the impairment is equivalent to a listed impairment then [the claimant] is per se disabled and no further analysis is necessary." Burnett, 220 F.3d

at 119.

The burden is on the ALJ to identify the relevant listed impairment in the federal regulations that compares with the claimant's impairment. Id. at 120 n.2. The ALJ must "fully develop the record and explain his findings at step 3, including an analysis of whether and why [the claimant's] ... impairments ... are or are not equivalent in severity to one of the listed impairments." Id.

In this case, the ALJ identified the relevant listings[1] for musculoskeletal impairments, specifically those for major dysfunction of a joint (1.02), reconstructive surgery or surgical arthrodesis of a major weight-bearing joint (1.03) and disorders of the spine/spinal stenosis (1.04.C), and adequately explained why plaintiff's impairments do not meet or equal those listings. (R. 13). The court is satisfied that the ALJ's step 3 analysis is adequate and his finding that plaintiff does not meet or equal

---

1. Plaintiff's argument that the ALJ failed to address Listing 1.05(c) addressing "other vertobrogenic disorders" is without merit. As the ALJ noted in her decision, her step 3 analysis was based on the revised musculoskeletal listings which became effective on February 19, 2002, two years prior to plaintiff's hearing. (R. 13). Under the listings in effect at the time of the hearing, listing 1.05(c) addressed amputation of one hand and one lower extremity, not other vertobrogenic disorders. Plaintiff's argument is based on the prior listings that were superseded by the February 2002 revisions. Moreover, "other vertobrogenic disorders", such as spinal stenosis and degenerative disc disease, which were addressed under the prior 1.05(c) are now, and were at the time of plaintiff's hearing, governed by listing 1.04, which the ALJ specifically addressed in her decision.

6

any listed impairment is supported by substantial evidence.

Plaintiff also challenges the ALJ's findings at step 5 of the sequential evaluation process. At step 5 of the sequential evaluation process the ALJ must show that there are other jobs existing in significant numbers in the national economy which the claimant can perform consistent with his medical impairments, age, education, past work experience and residual functional capacity. 20 C.F.R. §416.920(f). Residual functional capacity is defined as that which an individual still is able to do despite the limitations caused by his or her impairments. 20 C.F.R. §416.945(a); Fargnoli, 247 F.3d at 40. In assessing a claimant's residual functional capacity, the ALJ is required to consider the claimant's ability to meet certain demands of jobs, such as physical demands, mental demands, sensory requirements, and other functions. 20 C.F.R. §416.945(a).

Here the ALJ found that:

> [Plaintiff] has the following residual functional capacity: sedentary work which would not involve lifting or carrying more than 10 pounds occasionally, and would allow her to sit or stand at her discretion, and would not involve pushing or pulling with her extremities, reaching overhead, or exposure to extreme cold.

(R. 17).

Plaintiff raises 3 challenges to the ALJ's step 5 findings in this case. First, plaintiff argues that the ALJ failed to apply the medical-vocational guidelines, or "grids", which, according to

plaintiff, dictate a finding of disabled. Specifically, plaintiff contends that grid rules 201.21 and 201.17 "most closely resemble plaintiff's scenario" and that these rules call for a finding of disabled. Plaintiff's argument is without merit.

The grids set out various combinations of age, education, work experience and residual functional capacity and direct a finding of disabled or not disabled for each combination. <u>See</u> 20 C.F.R. Part 404, Subpart P, Appendix 2. When the four factors in a claimant's case correspond <u>exactly</u> with the four factors set forth in the grids, the ALJ must reach the result the grids reach. <u>Sykes v. Apfel</u>, 228 F.3d 259, 263 (3d Cir. 2000); 20 C.F.R. §416.969; 20 C.F.R., Part 404, Subpart P, Appendix 2, §200.00. The Supreme Court upheld the use of the grids in <u>Heckler v. Campbell</u>, 461 U.S. 458 (1983).

In this case, the ALJ properly used the grids as a framework, noting that if plaintiff could perform the full range of sedentary work, the grids would dictate a finding of not disabled. However, since plaintiff is impeded by additional exertional and non-exertional limitations from performing the full range of sedentary work, the ALJ correctly utilized a vocational expert to determine whether there are a significant amount of jobs existing in the national economy which plaintiff can perform. The court finds no error in the ALJ's use of the grids as a framework in this case.

Moreover, the grid rules plaintiff relies upon are

inapplicable to her situation. Grid rule 201.17 applies to younger individuals age 45-49 who are illiterate or unable to communicate in English. Plaintiff, however, is a high school graduate and there is no evidence whatsoever in the record supporting a finding that she is illiterate or unable to communicate in English. Likewise, plaintiff misconstrues grid rule 201.20, which actually directs a finding of <u>not</u> disabled for a younger individual age 45-49 who is a high school graduate with non-transferable skills and a skilled or semi-skilled work background.

Plaintiff also cannot rely on grid rules dealing with persons closely approaching advanced age in light of the fact that she subsequently turned 50 on September 7, 2004. The ALJ's decision was rendered on February 17, 2004, seven months prior to plaintiff turning 50. At that time, plaintiff was 49 years old and was classified as a younger person under the regulations. This court's function is to determine whether the ALJ's decision, based on the facts that existed at the time of that decision, is supported by substantial evidence. The ALJ's determination in this case, rendered while plaintiff was still classified as a younger person under the regulations, is so supported, and the fact that plaintiff reached age 50 after the decision is of no consequence to this court on review. If plaintiff believes she became disabled under the grids after the date of the ALJ's

decision, her recourse is to file a new application.

Plaintiff's next argument is that the ALJ improperly evaluated the medical evidence in assessing plaintiff's residual functional capacity. Specifically, plaintiff contends that the ALJ failed to consider medical evidence from Dr. Barbara Dappert and Dr. Robert Vandrak which would support a finding of disability, and instead relied solely on an opinion from Dr. Joyce Goldsmith, a mere "panel physician." Upon review the court finds that the ALJ's evaluation of the medical evidence also is supported by substantial evidence.

Under the Social Security Regulations and the law of this circuit, opinions of treating physicians are entitled to substantial, and at times even controlling, weight. 20 C.F.R. §416.927(d)(2); <u>Fargnoli</u>, 247 F.3d at 33. Where a treating physician's opinion on the nature and severity of an impairment is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record, it will be given controlling weight. <u>Id</u>. When a treating source's opinion is not entitled to controlling weight, it is evaluated and weighed under the same standards applied to all other medical opinions, taking into account numerous factors including the opinion's supportability, consistency and specialization. 20 C.F.R. §416.1527(d).

Here, the ALJ adhered to the foregoing standards in

10

evaluating the medical evidence. First, contrary to plaintiff's assertions, the record is clear that the ALJ addressed all of the medical evidence in its entirety and evaluated plaintiff's residual functional capacity in light of that evidence. (R. 12-15). In doing so, the ALJ expressly addressed the opinions from Dr. Dappert and Dr. Vandrak and explained why those opinions were not entitled to controlling weight.

Specifically, although Dr. Dappert and Dr. Vandrak both opined that plaintiff was unable to return to work, the determination of disability is reserved solely to the Commissioner and the opinion of a physician, treating or otherwise, never is entitled to special significance on that ultimate determination. 20 C.F.R. §416.1527(e); SSR 96-5p. Here, based upon her review of the _entire_ record, including plaintiff's medical records and plaintiff's own testimony and reported daily activities, the ALJ concluded that plaintiff's impairments, while severe, do not preclude her from performing _any_ substantial gainful activity.

Moreover, to the extent Dr. Dappert and Dr. Vandrak reported that plaintiff is unable to work, those opinions are inconsistent with the medical evidence. As the ALJ explained, a finding of disability is contradicted by the clinical and objective medical evidence of record, as well as with plaintiff's own reported activities of daily living. (R. 13-15). The ALJ explicitly noted that Dr. Vandrak's opinion that plaintiff could not work as of

11

January 2003 was rendered only a few months after plaintiff's cervical surgery (R. 14) and that Dr. Dappert's opinion was not accompanied by any specific clinical findings buttressing that assessment (R. 15).

Thus, because the suggestions from Dr. Dappert and Dr. Vandrak that plaintiff cannot work are not supported by the objective medical evidence and are inconsistent with other substantial evidence in the record, the ALJ did not err in giving those opinions little weight. 20 C.F.R. §416.927(d); SSR 96-2p. In addition, the court notes that the ALJ did not reject Dr. Dappert and Dr. Vandrak's reports altogether. Instead, the ALJ's residual functional capacity finding made numerous accommodations to plaintiff's medically supportable limitations by restricting her to less than the full range of sedentary work. (R. 17).

Finally, plaintiff argues that the ALJ's hypothetical to the vocational expert did not account for all of plaintiff's limitations. Instead, plaintiff argues the ALJ should have relied on the vocational expert's answer to a hypothetical posited by plaintiff's attorney incorporating an additional limitation whereby plaintiff only would be capable of standing four hours and sitting four hours in an eight hour workday. (R. 234). In response to that hypothetical, the vocational expert testified that such an individual "would be unable to stand long enough to do the prolonged standing and walking or sit long enough to do the

prolonged sitting." (R. 234).

However, as the ALJ explained in her decision, this additional limitation is not supported by the objective medical record and is inconsistent with plaintiff's reported activities of daily living. (R. 16). In fact, the foregoing limitation is supported only by plaintiff's subjective testimony, which the ALJ properly concluded was not totally credible.[2] As a hypothetical to the vocational expert must reflect all of the claimant's impairments and limitations supported by the record, <u>Podedworny v. Harris</u>, 745 F.2d 210 (3d Cir. 1984), the ALJ did not err in rejecting a response to a hypothetical incorporating a limitation not supported by the medical evidence. See <u>Jones v. Barnhart</u>, 364 F.3d 501, 506 (3d Cir. 2004) (ALJ had authority to disregard a vocational expert's response to a hypothetical inconsistent with evidence).

After carefully and methodically considering all of the medical evidence of record and plaintiff's testimony, the ALJ determined that plaintiff is not disabled within the meaning of the Act. The ALJ's findings and conclusions are supported by substantial evidence and are not otherwise erroneous.

---

2. The ALJ adhered to the standards set forth in 20 C.F.R. §416.929(c) and SSR 96-7p and adequately explained in her decision the basis for her determination that plaintiff's allegations regarding her limitations are not totally credible. (R. 14). Plaintiff does not challenge the ALJ's credibility determination here on appeal.

Accordingly, the decision of the Commissioner must be affirmed.

*Gustave Diamond*
Gustave Diamond
United States District Judge

cc: Susan M. Papa, Esq.
    439 Court Street
    New Castle, PA 16101

    Ellen M. Fitzgerald
    Assistant U.S. Attorney
    U.S. Post Office & Courthouse
    700 Grant Street, Suite 400
    Pittsburgh, PA 15219